DREW, J.
In this child custody matter, the father appeals a judgment awarding joint custody, with the mother having domiciliary status. We affirm.
FACTS AND PROCEDURAL HISTORY
This is an appeal from a decision modifying the parties' respective child custody rights regarding their child, C.M. Milton Mosby and Sharunda Prevo apparently are the biological father and biological mother of two minor children-M.M. and C.M.
On October 6, 2016, the parties filed protective orders against each other on behalf of C.M. Milton alleged that Sharunda was responsible for "kidnapping" C.M. while he was in Milton's legal custody. Sharunda alleged that Milton had kicked C.M. out of his house, leaving C.M. homeless until she took C.M. into her home.
In ruling on these protective orders, the trial court modified the custody arrangement-by awarding joint custody, with domiciliary parent status awarded to Sharunda. The appellant was awarded "visitation" every other weekend. The previous custody *624 arrangement had been more favorable to Milton, and was based in part on the fact that several years ago, Sharunda's former husband, Josh Vallo, raped M.M. As a result, Josh Vallo was convicted of aggravated incest in 2010.
TRIAL COURT's REASONS FOR JUDGMENT
The trial court offered oral reasons for judgment. The court noted that its duty is to do what is in the best interest of the minor child, C.M.; it also found a substantial material change in circumstances based on several facts. First, Josh Vallo is no longer a threat to the children as he is now imprisoned. Second, the court specifically found C.M.'s testimony-that he wants to live with his mother-to be "credible, true and genuine." The court also found that C.M., a 16 -year-old, has "reached the age of reason," and accorded substantial weight to C.M.'s preference. Third, the court also addressed problems that had occurred while the children were living with Milton, including the testimony of several witnesses that Milton had failed to pick up the children from the babysitter, and the children's testimony that Milton put C.M. out of the house.
APPELLANT's ASSIGNMENTS OF ERROR AND ARGUMENTS
Milton was not represented by counsel in the lower court and is not represented by counsel on this appeal. He appears to make the following arguments:
• The trial court lacked jurisdiction.
• He could not get a fair trial from any judge at the Second Judicial District Court because Sharunda is suing two judges of that court in a federal lawsuit; Judge Boddie, sitting ad hoc and not a party to federal lawsuit, ruled against Milton to placate Sharunda in regard to the federal lawsuit.
• The trial court ignored Sharunda's "kidnapping" of C.M.
• Judge Boddie erred in letting "Officer Trent Cook go October 24, 2016," without Milton first obtaining testimony from Officer Cook.
• The trial judge erred "when he did not get" Chief Mary Hoof from the Cullen Police Department; despite that she was subpoenaed for October 24, 2016, January 10, 2017, and May 28, 2017, she did not come to court one time.
• Judge Boddie erred "when he did not get Cyerra Prevo to court to testify to her Part kidnapping C.M.," despite that she was subpoenaed for May 28, 2017.
Jurisdiction of the trial court
Milton claims that the Second Judicial District Court lacked jurisdiction to modify the previous custody order regarding C.M.
District courts have original jurisdiction of all civil matters, except: (1) in worker's compensation matters; and (2) other matters specifically authorized by the Louisiana Constitution. La. Const. art. V, § 16. In this case, the district court had-and properly exercised-child custody jurisdiction regarding C.M.[1]
Judge Boddie's alleged bias
Milton argues that it was error for Judge Boddie to hear the case because Sharunda has filed a federal lawsuit against two judges of the Second Judicial District Court, also regarding the custody of C.M. Milton implies that, in this case, *625 Judge Boddie ruled in favor of Sharunda to placate her regarding the federal lawsuit.
However, Milton does not allege that Judge Boddie is a party to the federal lawsuit. Furthermore, we note that, because the judges of the Second Judicial District Court were recused, Judge Boddie was appointed ad hoc to hear this case. Thus, the apparent purpose of Judge Boddie's appointment was to remedy any supposed bias on the part of the Second Judicial District Court judges. We must consider that purpose to have been accomplished-indeed, the record is devoid of contrary evidence.
Additionally, Milton waived his right to object to Judge Boddie presiding over the case. La. C.C.P. art. 154 sets forth the procedure for recusing a judge, as follows:
A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.
A party who fails to file a motion to recuse the judge despite the party's knowledge of the grounds for recusation waives his right to urge recusal upon the passage of the deadlines set forth in La. C.C.P. art. 154. Settle v. Bossier Parish School Bd. , 47,644 (La. App. 2 Cir. 7/3/12), 93 So.3d 1284, writ denied , 2012-1569 (La. 7/11/12), 92 So.3d 347.
Despite being fully aware of the federal lawsuit,[2] Milton failed to file a motion to recuse Judge Boddie at any time in the trial court. Accordingly, Milton waived his right to complain about Judge Boddie's alleged bias.
Trial court's finding that Sharunda did not kidnap C.M.
"In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong." Hall v. Folger Coffee Co., 2003-1734 (La. 4/14/04), 874 So.2d 90. Upon review of the record, we hold that the trial court's finding that Sharunda did not "kidnap" C.M.-or have him kidnapped-was well supported by the record and not manifestly erroneous. Most importantly, C.M. himself testified that he voluntarily went to his sister's house and then his mother's house after Milton locked him out of Milton's house.
Nonappearance of witnesses
Due to the absence of witnesses, this matter was tried on three nonconsecutive days: October 24, 2016; January 10, 2017; and March 28, 2017. For the October 2016 hearing, the parties attempted to subpoena witnesses, but the subpoenas did not all issue, due to no fault of the parties. Additionally, at each of the three hearings, at least one subpoenaed witness did not appear. Accordingly, the court heard the witnesses who were present, and continued the matter to allow the parties to secure the presence of the remaining witnesses.
Milton complains that three witnesses did not appear, despite being duly subpoenaed, and that somehow constituted error *626 on the part of the court. Specifically, Milton alleges that, despite being duly subpoenaed: (1) Officer Trent Crook failed to appear for testimony at the October 24, 2016, hearing; (2) Chief Mary Hoof of the Cullen Police Department failed to attend all three of the hearings, despite being subpoenaed for all of them; (3) Cyerra Prevo failed to attend the March 28, 2017, hearing.[3]
Contrary to the appellant's assignments of error, Officer Trent Crook was present and did testify on October 24, 2016. Additionally, Cyerra Prevo testified on October 24, 2016; Milton cross-examined her.
At the January 2017 hearing, the court indicated that it would issue a writ of attachment for Chief Hoof. However, she failed to attend the March 28, 2017, hearing. The court was notified and instructed the bailiff to telephone Chief Hoof; the bailiff reported that there was no answer when her telephone number was called.
During the March 28, 2017, hearing, Milton never asked for a continuance on the basis of the absent witnesses. He did not ask that the record be left open until he could introduce the absent witness's testimony, and he did not otherwise object to the case proceeding to judgment without him being able to introduce their testimony.
In Hawkins v. City of Bossier, 51, 082 (La. App. 2 Cir. 1/11/17), 211 So.3d 665, the appellant claimed that he was "not allowed" to call any new witnesses at a certain hearing. The appellant subpoenaed two witnesses, who failed to appear, and on that basis, a continuance was granted. The appellant resubpoenaed those witnesses, who again failed to appear. The appellant then called one live witness and presented other evidence. The record did not show that appellant's then-attorney objected or moved to attach the two absent witnesses, or to continue the hearing until they could be found or hold the record open for their depositions. This court held that, without a timely objection to the proceedings, the issue of the witnesses' nonappearance was not properly preserved for appeal. Id.
Hawkins precludes Milton's appeal regarding the absent witnesses. As mentioned above, despite the nonappearance of these witnesses, Milton did not request a continuance, or request that the record be left open, or object the case proceeding to judgment. In short, he failed to do the necessary to preserve the issue of these witnesses' nonappearance. For this reason alone, Milton's assignment of error lacks merit as to all three "absent" witnesses.
This assignment of error lacks merit for additional reasons. Milton did in fact elicit testimony from Cyerra Prevo and Officer Trent Crook. Any deprivation of their testimony he suffered was the result of his own failure to ask all the questions he wanted to ask. What additional testimony he believes he would have elicited from any witness, and why that testimony was material to his case, is not in the record before us.
CONCLUSION
Based on the foregoing, at appellant's cost, the judgment is AFFIRMED.

This is not a Uniform Child Custody Jurisdiction and Enforcement Act case because both parents and the child reside in Louisiana, and the record indicates that they also did so at the time of the previous custody order. Furthermore, the appellant has made no argument whatsoever supporting his claim that the trial court lacked jurisdiction.

See, e.g., R. pp. 621, 649.

Cyerra Prevo was served with domiciliary service in relation to March 28, 2017, hearing.